BROOKSHIRE KATY DRAINAGE
DISTRICT, Appellant,

v.

The LILY GARDENS, LLC, Richard
E. Flueckiger and Kenneth B.
Luedecke, Appellees.

No. 01–07–00431–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 25, 2011.

David Frishman, Katy, Kevin D. Jewell, William S. Helfand, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, for appellant.

Dale Jefferson, Levon G. Hovnatanian, Raul H. Suazo, Martin, Disiere, Jefferson & Wisdom, Houston, for appellant.

ELSA ALCALA, Justice, concurring.

This case is about a picturesque cover placed over an existing bridge on private land. Long ago, appellant, Brookshire Katy Drainage District ("the District"), constructed a drainage canal across the land pursuant to an express easement with prior landowners. Around that time, the District built the bridge across the canal. Appellees, Lily Gardens, LLC, Richard E. Flueckiger, and Kenneth B. Leudeck ("the Landowners"), who operate an outdoor-venue business on the land, placed the cover on the bridge in the belief that it enhances their business. The District brought this action to compel the Landowners to remove the cover from the

bridge. The district court and a panel of this Court have both ruled in favor of the Landowners, determining that the cover may remain.

## The History of the Bridge and Cover

In 1962, the District obtained an easement for a drainage ditch approximately 10 feet deep that runs across the entire width of the property. The ditch divides the front portion from the back part of the property. To allow ingress and egress from the back portion of the property that is otherwise inaccessible due to the ditch, the District built the bridge over 30 years ago. The bridge has never affected drainage in any way. In 2004, the Landowners purchased this property with the intention of beautifying it for use as a facility to host weddings. To beautify the bridge, the Landowners constructed a cover that is 24 feet long and 20 feet wide. The cover consists of a triangular-shaped roof and two sides, which conceal the unattractive steel guardrails that support the bridge. A large vehicle can travel over the bridge and under the cover without any impediment such as walls or doors. The lowest portion of the bridge cover is approximately 10 feet above the ground, and no portion extends below the bridge.

In October 2006, a voluminous amount of rain besieged the land in one of the wettest months in recorded history, but the waters flowed unimpeded by the bridge cover. The prior owner of the land said that in the past 25 years, he never saw the level of the water rise above the banks of the ditch, even during Tropical Storm Allison. The Landowners' engineer expert opined that the bridge cover would have "no real effect" on the drainage waters.

## The Terms of the Private Easement

This lawsuit is not about easements granted to public utilities in general because this easement was the product of a private contract between the District and prior landowners. Rather, this lawsuit is about a particular bridge cover and whether it violates the particular contractual and legal rights of an easement holder, the District. Under the parties' contract, the District has the right to "abate other obstruction, upon said canal right of way, that may injure, endanger, or interfere with the construction, operation, maintenance and repair of said drainage canal." Under the law, the District has the right to reasonable use and enjoyment of its easement right, and the Landowners must not engage in any activity that interferes with that right. *See Still v. Eastman Chem. Co.*, 170 S.W.3d 851, 854 (Tex.App.-Texarkana 2005, no pet.) (citing *Harris County v. S. Pac. Transp. Co.*, 457 S.W.2d 336, 340 (Tex.Civ.App.-Houston [1st Dist.] 1970, no writ)).

The Landowners do not deny that the contract prohibits them from activities that may interfere with the District's use of the drainage canal, nor that the law prohibits them from interfering with the District's use and enjoyment of its easement rights. What the Landowners dispute is whether the bridge cover in issue actually may or does interfere with these rights. Because the District put forth no evidence of such interference or the potential for such interference, we affirmed the trial court's judgment in favor of the Landowners.

Although it concedes that the cover does not currently interfere with its reasonable use and enjoyment of the easement, the District asserts that in the future, the cover might create a drainage problem or might make it difficult to remove the culverts, which are metal pipes inside the canal, because the bridge cover might interfere with access. The District, however, presented no evidence showing how the

cover—as compared to the bridge—might interfere in any way with the District's ability to construct, operate, maintain, or repair the drainage canal. The cover simply made what was already there prettier.

The examples given in the amicus briefs concerning how the cover might interfere with the easement in the future illustrate the evidentiary failure that occurred here. One amici contends that the cover might prevent a backhoe from moving onto the bridge and reaching down into the culverts to remove debris. It also states that equipment might need to be located on the bridge in order to replace existing culverts. However, the District presented no evidence of this. Had an expert provided an affidavit averring to the reasonable possibility that these things might occur, the trial court and the panel of this Court likely would have ruled in its favor. Instead, the evidence shows the cover is above ground level and has never affected the drainage canal in any way despite heavy rain. No mention of the possible need for heavy equipment is in evidence. Although the use of the word "may" in the contract indicates a low standard, proof is still required. Even had the District established that this easement is forward looking due to the use of the word "may," the evidence would remain deficient to show how the cover might reasonably affect the easement in the future.

Furthermore, the parties could have negotiated a contract that precluded construction of any structure on or near the easement. Cf. *Pan Am. Gas Co. v. Lobit*, 450 S.W.2d 877, 880 (Tex.Civ.App.-Houston [1st Dist.] 1969, writ ref'd n.r.e.) (pipeline easement provided that subservient estate owner could not build or construct any obstruction, building or other structure over or on right-of-way); *Okan Pipeline Co. v. Eiland*, 394 S.W.2d 548, 550 (Tex.Civ.App.-Eastland 1965, writ ref'd n.r.e.) (gasoline easement prohibited constructing "any obstruction, building, engineering works, or other structure over said pipe line"). This particular contract does not absolutely disallow structures; rather, the plain language of the contract implicitly allows structures as long as they may not interfere with the canal.

## No–Evidence Review

In her dissent from denial of en banc review, Justice Keyes objects to the application of the no-evidence standard, rather than the traditional summary judgment standard, in review of this appeal. It is well-established in this Court that, when a party moves for both traditional and no-evidence summary judgment, we first review the trial court's summary judgment under the no-evidence standard of Texas Rule of Civil Procedure 166a(i).[1] Justice

---

1. *E.g., Aspenwood Apartment Corp. v. Coinmach, Inc.*, 349 S.W.3d 621, 630 (Tex.App.-Houston [1st Dist.] 2011, no pet. h.) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004)); *Coburn v. Toys "R" Us–Delaware, Inc.*, No. 01–09–00871–CV, 2011 WL 345936, at *2 (Tex.App.-Houston [1st Dist.] Feb. 3, 2011, no pet. h.) (mem. op.); *Bosch v. Cedar Vill. Townhomes Homeowners Ass'n, Inc.*, No. 01–09–00654–CV, 2011 WL 346317, at *2 (Tex.App.-Houston [1st Dist.] Feb. 3, 2011, no pet. h.) (mem. op.); *Samuel v. Wal–Mart Stores, Inc.*, No. 01–08–00702–CV, 2010 WL 2788879, at *2 (Tex.App.-Houston [1st Dist.] July 15, 2010, pet. denied) (memo. op.); *Maurer v. 8539, Inc.*, No. 01–09–00709, 2010 WL 5464160 (Tex.App.-Houston [1st Dist.] Dec. 30, 2010, no pet.) (mem. op.); *Allen & Martha Lewis Revocable Trust v. Perales*, No. 01–09–00140–CV, 2010 WL 3212125, at *5 (Tex.App.-Houston [1st Dist.] Aug. 12, 2010) (mem. op.) *decision clarified on denial of reh'g*, No. 01–09–00140–CV, 2010 WL 4056513 (Tex.App.-Houston [1st Dist.] Oct. 14, 2010, no pet.); *Clark v. Wells Fargo Bank, N.A.*, No. 01–08–00887–CV, 2010 WL 2306418, at *4 (Tex.App.-Houston [1st Dist.] June 10, 2010, no pet.) (mem. op.); *Blevins v. Andrews*, No. 01–08–00598–CV, 2010 WL 1611382, at *3 (Tex.App.-Houston [1st Dist.]

Keyes recognizes this practice, but argues that the practice is problematic in instances where the issue is a "pure question of law." Without commenting on the merits of Justice Keyes's analysis, I respectfully disagree that the case at bar presents "purely legal issues." As demonstrated above, this case necessarily depends on a determination of whether the bridge cover in issue hinders or may hinder the District's use of its easement. This is necessarily a fact-specific inquiry subject to the presentation of evidence by the parties.

In fact, while the original opinion in this case, which Justice Keyes endorses, ostensibly applied a traditional summary judgment standard, it too looked to the District's evidence to determine the issue of whether the bridge cover may impede the District's use of the easement. The pivotal distinction between the opinion issued on rehearing and the original opinion is not found in interpretation of the contract or easement law, but in the determination of whether the testimony in Raymond Dollins's affidavit constitutes competent evidence that the bridge cover may interfere with the District's maintenance and operation of the drainage system.

Finally, Justice Keyes asserts that "[t]he problem with granting a no-evidence summary judgment on a purely legal issue is, as the court in the *Cone* case acknowledged, that, even if a motion for summary judgment is presented as a no-evidence motion, the law must be construed before it can be determined what the elements of the applicable law are as to which the non-movant must produce proof." I respectfully disagree that this approach is problematic in this case, nor do I read *Cone* as identifying a "problem" rather than merely observing common practice. *See Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 156

n. 4 (Tex.App.-Eastland 2001, pet. denied) ("the court must determine the law which is applicable to the case with respect to any no-evidence motion for summary judgment in order to determine if the summary judgment evidence raises a genuine issue of material fact. The fact that a dispute exists with respect to the applicable law does not prevent the court from performing its function of analyzing the non-movant's evidence to determine if it raises a fact issue."). Courts are routinely, if not always, put to the task of determining legal issues in deciding no-evidence motions for summary judgment. To decide whether a plaintiff has put forth evidence of the elements of a tort, the court must necessarily determine what those elements are. Granting summary judgment on the basis of a failure to present evidence of an element that the law does not impose is error. *See, e.g., Moreno v. Quintana*, 324 S.W.3d 124, 136–37 (Tex.App.-El Paso 2010, pet. denied) (reversing no-evidence summary judgment where movant alleged no evidence of malice but malice was not element of non-movant's claim); *Villarreal v. Wells Fargo Brokerage Services, LLC*, 315 S.W.3d 109, 127 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (reversing no-evidence summary judgment where only element identified by movants as entitling them to summary judgment was not element of claim on which summary judgment was granted); *Baker v. City of Robinson*, 305 S.W.3d 783, 793 (Tex.App.-Waco 2009, pet. denied) (sustaining error with respect to traditional and no-evidence summary judgment on statutory fraud claim on basis of absence of intent to deceive because intent to deceive is element of common law fraud but not statutory fraud claim pled). The primary distinction between traditional and no-evidence motions for summary

Apr. 22, 2010, no pet.) (mem. op.); *Dixon Fin. Servs., Ltd. v. Chang*, 325 S.W.3d 668, 676 n.

5 (Tex.App.-Houston [1st Dist.] 2010, pet. denied).

judgment is not whether the court must decide legal issues to rule on the motion—both motions require the court to act as arbiter of the law—but, rather, whether the legal issues in the case dictate the outcome without regard to any evidentiary issue.

## The Consequences of This Decision

The terms of this private contract do not absolutely disallow structures. They limit only those obstructions that may injure, endanger, or interfere with the construction, operation, maintenance and repair of the drainage canal. That some construction can coexist with a free flowing drainage canal is evident from the District's own bridge, which sits above the easement without obstruction or interference. This decision is case specific. We examine the facts in light of the existing bridge and the absence of any summary judgment evidence explaining how the cover might affect the easement beyond any effect by the bridge.

This case does not meet the en banc standard for review. *See* Tex.R.App. P. 41.2(c). Nothing is extraordinary about this case, there are no consequences beyond the particular interpretation of this private contract, and this decision does not conflict with any other. *See id.* Despite the dire consequences predicted by government entities, this case comes down to one government entity's evidentiary failure in one case—nothing more. This Court's holding does not diminish the rights of public entities to abate obstructions that the evidence demonstrates in reasonable likelihood may impair or impede the use of the easement. For these reasons, I concur in the denial of en banc consideration and submit that the petition for review should be denied. *See id.;* Tex.R.App. P. 56.1(a).

## Conclusion

I concur with the denial of en banc consideration.

A majority of the justices of the Court voted to overrule the motion for en banc reconsideration.

En banc court consists of Justices JENNINGS, KEYES, ALCALA, HIGLEY, BLAND, SHARP, MASSENGALE, BROWN, and WILSON. Chief Justice RADACK not participating.

Justice ALCALA, concurring in the denial of en banc reconsideration.

Justice MASSENGALE, concurring in the denial of en banc reconsideration.

Justice JENNINGS, dissenting from the denial of en banc reconsideration, joined by Justice KEYES.

Justice KEYES, dissenting from the denial of en banc reconsideration, joined by Justice JENNINGS.

Justice WILSON, dissenting from the denial of en banc reconsideration.

MICHAEL MASSENGALE, Justice, concurring.

I concur in the denial of en banc reconsideration. We are constrained to review the outcome of the actual proceedings in the trial court, where the District brought an action to enforce its easement rights, and the property owners filed a summary-judgment motion contending that the District was not legally entitled to the relief it sought. Upon the property owners' filing of a no-evidence summary-judgment motion, the District was obligated to "produce summary judgment evidence raising a genuine issue of material fact." Tex.R. Civ. P. 166a(i). That may not have been an insurmountable burden in this case, but it is a burden that the District failed to meet.

The District did not argue in its response that the bridge covering could in-

terfere with maintenance and repair of the drainage canal. Because the District failed to make such an argument, the trial court was correct not to deny summary judgment on that basis, and, more importantly, we cannot reverse on that basis.[1] Application of the ordinary procedural rules does not undermine the public policy interests underlying an easement dispute such as this one, which favor a servient estate maximizing its value to the full extent possible without unreasonably interfering with the interests of the dominant estate.[2] The improvement to the property at issue obviously serves to maximize the aggregate utility of the dominant and servient estates, and thus it should not be discouraged for a reason not timely advanced by the easement owner.

Properly understood, this is a case about application of the summary-judgment standards, not the application of substantive law pertaining to easements. This appeal presents no legal issue of whether the bridge covering could be considered an obstruction to maintenance or repair of a drainage canal—that issue was waived because the District presented the trial court with no argument suggesting that was what the evidence showed.

A majority of the justices of the Court voted to overrule the motion for en banc reconsideration.

**TERRY JENNINGS, Justice, dissenting.**

I respectfully dissent from the denial of en banc reconsideration of this case because the extraordinary issue presented requires the attention of the full court. *See* TEX.R.APP. P. 41.2(c). For the reasons stated in his dissenting opinion, I agree with Justice Wilson that the panel majority has erred in affirming the trial court's summary judgment against appellant, Brookshire Katy Drainage District ("the District"), in its suit for declaratory and injunctive relief against appellees, Lily Gardens, LLC, and its owners, Richard E. Flueckiger and Kenneth B. Luedecke. In arguing for en banc reconsideration, the District asserts that the panel majority, in its opinion, "disregards the language and purpose of the easement in question, well-established Texas jurisprudence, and the competent evidence presented by the District." It emphasizes that the panel's opinion affects "the rights of easement holders in light of Texas public policy."

The dispositive facts, as established by the summary-judgment evidence, are straightforward. As noted by the panel majority, "[t]he District is a political subdivision of the State of Texas, created by the Texas Legislature, and charged with controlling drainage in an area of Waller

---

1. TEX.R.APP. P. 33.1; TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex.2010) ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) ("[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence.").

2. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.9 & cmt.b (2000); *see also Severance v. Patterson*, No. 09–0387, 2010 WL 8366839, at *9 (Tex. Nov. 5, 2010) ("Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement.").

County." The District is a conservation and reclamation district containing the waters of the Buffalo Bayou and the Barker Reservoir, which was created by the Texas Legislature in 1961. *See* TEX. SPEC. DIST. CODE ANN. §§ 6603.001–204 (Vernon Supp. 2010); *see also* TEX. CONST. art. XVI, § 59; TEX. WATER CODE ANN. § 53.088 (Vernon 2002). The District is charged with the "drainage of its overflowed lands." TEX. CONST. art. XVI, § 59(a). To accomplish this, the District "has all the rights, powers, privileges, and duties conferred and imposed by general law." TEX. SPEC. DIST. CODE ANN. § 6603.101.

Since 1962, the District has owned a "Right of Way Easement" for a "drainage canal and system" on approximately 13 acres of real property, which, in October 2004, was purchased by appellees, The Lily Gardens, L.L.C., Richard E. Flueckiger, and Kenneth B. Luedecke (collectively "Lily Gardens"). The District's easement has an aggregate width of 50 feet and extends across Lily Gardens's property. Under its easement, the District "shall have all rights and benefits necessary or convenient for [its] full enjoyment or use of [its] rights." The District has the expressly recognized "right from time to time to cut and remove all trees, undergrowth, and abate other obstruction, upon said canal right of way, that may injure, endanger, or interfere with the construction, operation, maintenance and repair of said drainage canal." The only rights reserved by the grantors of the easement were the right to the minerals in and under the land covered by the easement and the right to use the "facilities offered by the drainage canal for the disposal of surface waters, rain, or any excess waters collecting upon [the] land . . . ."

Lily Gardens attached to its summary-judgment motion the District's "RULES AND REGULATIONS NO. 05–01," which provide a process and procedure for landowners like Lily Gardens to obtain, upon the District's approval, an access permit to construct, among other things, private or public crossings of the District's drainage facilities. The rules and regulations contain specific requirements for bridges and specifically prohibit "wooden bridges."

The District attached to its response to Lily Garden's summary-judgment motion the affidavit of Raymond Dollins, the president of the District. Dollins testified that at some point in time, the District installed two culverts, drain conduits, at a juncture in the canal that extends across Lily Gardens's property. He explained that although the District has the above rules and regulations in place, Lily Gardens, without applying for an access permit, and after being instructed by the District to "cease and desist," constructed a "covered bridge" over the culverts as illustrated by the photographs in "Exhibit 2" to his affidavit and attached as an appendix to this opinion. The photographs reveal that the "bridge cover" in question is actually a large wooden structure in the shape of a house. Dollins noted that the District's right-of-way easement contains "a major drain-way and [is a] critical part of the District's drainage system," and, in seeking to protect its easement rights, he emphasized the District's interest in the continued maintenance and operation of its drainage system. And he illustrated that the large wood structure could readily impede the District in exercising its broad "authority and discretion" in performing its duties. For example, if the District, in the exercise of its full enjoyment and use of its rights, finds it necessary or convenient to "relocate, maintain, remove and/or replace its culverts," how can it do so without removing the large wooden structure built over them?

Although the summary-judgment evidence of Lily Gardens reveals that a cement bridge was already in place over the District's culverts when Lily Gardens purchased its real property in October 2004, it also reveals that Lily Gardens did in fact build a "cover [over the bridge] that is approximately 24 feet long, 20 feet wide, and has a clearance height of 14 feet 6 inches." In other words, Lily Gardens built a 480 square foot wood structure over the District's culverts in the middle of the District's right-of-way easement.

Regardless, the trial court, in its final judgment, declared that "the bridge covering at issue is not a nuisance, and does not encroach on [the District's] easement rights." And the panel majority, concluding that Dollins' testimony is conclusory, affirms the trial court's judgment on no-evidence grounds. See Tex.R. Civ. P. 166a(i).

As noted in the opinion of the panel that first considered this case, it is well-established Texas law that the scope of an easement holder's rights under an easement is determined by the express terms of the grant. *Marcus Cable Assocs. v. Krohn,* 90 S.W.3d 697, 701 (Tex.2002); *DeWitt County Elec. Co-op. v. Parks,* 1 S.W.3d 96, 103 (Tex.1999). While it may be that the 480 square foot wooden structure built by Lily Gardens is not currently interfering with the flow of the drainage waters within the District's easement, this is not the test for determining whether the structure itself constitutes an encroachment on the District's easement rights. Rather, the easement language should be read broadly and in light of the circumstances and purposes of the easement to actually allow the District what is granted therein; namely, the rights and benefits necessary or convenient for the full enjoyment and use of the rights granted by the easement. *See Mobil Pipe Line Co. v. Smith,* 860 S.W.2d 157, 159 (Tex.App.-El Paso 1993, writ dism'd w.o.j.). Thus, that Dollins testified to what seems obvious, i.e., the 480 square foot wood structure interferes with the District's broad "authority and discretion" to perform its duties in regard to its easement, does not render his testimony conclusory. Accordingly, if the District did not prove its entitlement to judgment as a matter of law, it, at the very least, raised material questions of fact, especially on the issue of Lily Gardens' encroachment upon the Districts' right-of-way easement rights.

Although the trial court's and the panel majority's error in concluding otherwise might initially seem unremarkable, it is actually profound. As noted in the brief of amici curiae, the Texas Water Conservation Association, the Texas Municipal League, and the Texas City Attorneys Association, the error "effectively nullifie[s] commonplace easement terms and purposes, and represents an anomaly and inconsistency with both law and common practice throughout the State of Texas." Accordingly, the error is of such importance to the jurisprudence of the State of Texas that it should be corrected. *See* Tex. Gov't Code Ann. § 22.001(a)(6) (Vernon 2004).

A majority of the justices of the Court voted to overrule the motion for en banc reconsideration.

EVELYN V. KEYES, Justice.

I respectfully dissent from denial of en banc reconsideration of the panel majority opinion on rehearing issued on September 10, 2010. I agree with the reasoning in Judge Wilson's dissent from the September 10, 2010 panel majority opinion and would have joined his original opinion, issued December 22, 2009, which was withdrawn and vacated by the later opinion. I also join Justice Jennings' dissent from denial of en banc reconsideration.

This summary judgment case has generated two diametrically opposed opinions and three dissents. The first opinion (the December 22, 2009 opinion) decided this declaratory judgment case seeking to clarify the rights of the interest under a water district drainage easement as a traditional motion for summary judgment under Texas Rule of Civil Procedure 166a(c). *See* TEX.R. CIV. P. 166a(c). Originally, the panel held, as a matter of law, that there was only one reasonable construction of the express terms of the easement. Under that construction, the plain terms of the easement "grant[ed] to the District the authority to remove any obstruction upon its canal right of way that may interfere with the operation of the drainage canal now or in the future." *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, No. 01–07–00431–CV, 2009 WL 5064759 (Tex. App.-Houston [1st Dist.] Dec. 22, 2009) (opinion withdrawn on rehearing). The panel further held that, under its construction of the easement language, "Lily Gardens failed to establish that there are no genuine issues of material fact to be decided and that it is entitled to judgment as a matter of law." *Id.* It, therefore, remanded the case for further proceedings.

On rehearing, the panel majority withdrew and vacated the December 22, 2009 opinion and issued the September 10, 2010 opinion, now on motion for en banc reconsideration. The September 10, 2010 panel majority opinion cites *Ford Motor Co. v. Ridgway* in concluding that when, as here, a motion for summary judgment is filed both as a traditional motion for summary judgment under Rule 166a(c) and as a "no evidence" motion under Rule 166a(i), i.e., as a hybrid motion, a court must first review the trial court's summary judgment under the no-evidence standards of Rule 166a(i). *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 307 (Tex.App.-Houston [1st Dist.] 2010, no pet.

h.) (op. on rehearing) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). In doing so, the panel majority determined that a pure question of law— the rights of the District under the terms of the easement—could be decided on a no-evidence basis. In my opinion, the panel majority erred in withdrawing its December 22, 2009 opinion and substituting the September 10, 2010 opinion.

Texas Rule of Civil Procedure 166a(i), which the panel majority applied in its September 10, 2010 opinion, provides for a no-evidence motion for summary judgment only when, after adequate time for discovery, "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX.R. CIV. P. 166a(i). "The motion must state the elements as to which there no evidence," and "[t]he court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* The Texas Supreme Court's 1997 Comment to newly added subsection 166a(i) sets out "the construction and application of the rule," stating,

> Paragraph (i) authorizes a motion for summary judgment based on the assertion that, after adequate opportunity for discovery, there is no evidence to support one or more specified elements of an adverse party's claim or defense.... [P]aragraph (i) does not apply to ordinary motions for summary judgment under paragraph (a) or (b), in which the movant must prove it is entitled to judgment by establishing each element of its own claim or defense as a matter of law or by negating an element of the respondent's claim or defense as a matter of law.

TEX.R. CIV. P. 166a cmt.–1997.

Texas Rule of Civil Procedure 166a(c), which the panel applied in its prior Decem-

ber 22, 2009 opinion, provides for summary judgment when the summary judgment proof and pleadings under subsection (a) or (b) and (c) "show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the [legal] issues expressly set out in the motion or in an answer or any other response." TEX.R. CIV. P. 166a(c). This summary judgment case was brought (1) to construct the language in the District's drainage easement that granted it "a right of way and easement for the purpose of constructing, maintaining, operating, repairing and re-constructing a drainage canal, including drains, ditches, laterals and levees …," and (2) according the District "the right from time to time to … abate other obstruction, upon said canal right of way, that may injure, endanger, or interfere with the construction, operation, maintenance and repair of said drainage canal."

Lily Gardens argued, in its summary judgment motion and in its appellate brief, that "Texas courts construe easements, and the conditions placed upon them, in a manner that places as little burden as possible upon the servient estate"; that "[t]he easement agreement speaks in terms of allowing [the District] to abate an 'obstruction' that may interfere with operating the ditch"; and that, under criminal law regarding obstruction of a street, "the legislature expressly defined 'obstruct' as meaning 'to render impassable or to render passage unreasonably inconvenient or hazardous' " and one court of appeals had construed "obstructions" under the Texas Tort Claims Act, section 101.022(b) of the Texas Civil Practice and Remedies Code, as not including "a bump in the road … since passage around the bump could be had on either side." It then argued that "all the evidence establishes as a matter of law the lack of any such impediment."

Completely absent in Lily Gardens no-evidence summary judgment motion was any reference to controlling statutes and precedent construing the terms of drainage easements or even to the language of the easement other than the word "obstruction." Rather, Lily Gardens made the cursory argument that Texas law provides that a landowner cannot interfere with the reasonable use and enjoyment of an easement and that "Texas courts construe easements in a manner that accomplishes that purpose while placing as little burden as possible upon the servient estate." And Lily Gardens contended that, under its construction of the law, *it*—the *movant*, not the nonmovant—had "presented ample evidence that the bridge covering was not an 'obstruction' and did not interfere with [the District's] rights." It followed this argument with six pages of jury argument, followed by a string citation to cases in which Texas courts had found that an easement owner was not allowed to remove an obstruction but only to take reasonably necessary measures for the use and enjoyment of its easement.

The panel originally concluded, in its December 22, 2009 opinion, that the District had "the right to abate any obstruction that may interfere with the drainage canal." *Brookshire Katy Drainage Dist.,* 2009 WL 5064759 (opinion withdrawn on rehearing). It held that Lily Gardens had failed to establish that it was entitled to judgment as a matter of law, and it also held that "the District has raised a genuine issue of material fact as to the elements of encroachment upon its easement rights." *Id.* The panel majority, in its September 10, 2010 opinion on rehearing, simply accepted Lily Gardens' statement of the law and concluded that its task, in reviewing the summary judgment motion under Rule 166a(i), was to "determine whether the mere act of constructing the bridge cover-

ing, even if that covering does not extend into the canal or impede the flow of water the canal beneath it, violates the terms of the easement." It then determined, without reference to the express terms of the drainage easement or to law construing the rights of the District as holder of the easement, that the District had to "prove that the Defendants engaged in activities that that interfered with the District's reasonable use and enjoyment of the easement" and that the District had not produced evidence to show "that the covering either impedes the flow of water through the canal or that it might, in the future, impact the District's ability to repair or maintain the canal." *Brookshire Katy Drainage Dist.*, 333 S.W.3d at 308–12 (op. on rehearing). It held that statements in the affidavit of the President of the District, Raymond Dollins, were merely claims "that the District's legislative authority allows it to do certain things (Dollins's interpretations of the law)" and, therefore, "were not competent summary judgment evidence." *Id.* at 307–09.[1] It concluded that the trial court could have properly granted Lily Gardens' no-evidence summary judgment motion, and, therefore, declined to reach the traditional motion. *Id.* at 311–12.

In other words, the panel majority determined that the District had to prove that Lily Gardens' past activities had interfered with its "reasonable use and enjoyment of the easement" under the *movant's* construction of the terms of the easement and the *movant's* evidence, whether the movant was right or wrong on the law. It ignored the plain language of the easement itself, the governing statutes and prece-

dents, and the arguments and affidavit of the District as irrelevant, and it placed a burden on the *District* to have produced evidence sufficient to raise a material fact issue as to the past or future interference of Lily Gardens' covered bridge in the easement with the flow of water in the ditch, as Lily Gardens asked it to do, rather than placing the burden on *Lily Gardens* to prove its entitlement to judgment as a matter of law. Finding no evidence that the covered bridge then under construction had interfered with the "reasonable use and enjoyment" of the ditch as Lily Gardens construed it and no evidence of a future occasion in which it would do so, the panel majority affirmed summary judgment in favor of Lily Gardens.

Several factors contributed to this erroneous holding. First, Lily Gardens' no-evidence motion for summary judgment was brought on a pure question of law. A petition for declaratory judgment, such as the one filed by the District in this case, seeks a declaration of rights, i.e., an interpretation of the terms of a statute or instrument as a matter of law. *See* TEX. CIV. PRAC. & REM.CODE § 37.004 (Vernon 2008) ("A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected a statute ... may have determined any question of construction or validity arising under the instrument, statute, ... [or] contract ... and obtain a declaration of rights, status, or other legal relations thereunder."). In other words, the District sought

---

1. In a proper no-evidence inquiry this should have ended the matter, since the court's ruling is supposed to turn on the *non-movant's* lack of evidence to support an element of its claim or defense on which it has the burden of proof, not on the *movant's evidence*, and the panel determined it had to prove a right to prevent obstructions and could not prove it by this evidence, its only evidence of its legal rights other than the undisputed easement itself. *See* TEX.R. CIV. P. 166a(i) & cmt.–1997.

a ruling on the law as to its rights under its easement, not on the evidence.

A no-evidence motion for summary judgment is expressly restricted, by the language of Rule 166a(i) itself and the 1997 Comment, to the judicial determination of whether evidence exists to support a specific element of a claim or defense on which the non-movant has the burden of proof at trial. *See* TEX.R. CIV. P. 166a(i) & cmt.–1997. Nevertheless, a body of law has developed that disagrees with the 1997 Comment's statement of the requirements of no-evidence summary judgment practice, creating a split among the courts of appeals—one in which the panel majority's September 10, 2010 opinion now takes its place. The conflict stems from *Harrill v. A.J.'s Wrecker Svc., Inc.,* in which the Dallas Court of Appeals held that granting a no-evidence motion based on a purely legal issue is error. 27 S.W.3d 191, 194 (Tex. App.-Dallas 2000, pet. dism'd). Other courts of appeals have agreed. *See also In re Estate of Allen,* 301 S.W.3d 923, 929 (Tex.App.-Tyler 2010, pet. denied) ("[C]onstruction of an unambiguous will or codicil is a question of law. And purely legal issues can never be the subject of a no-evidence motion for summary judgment. Because construction of the thirteen writings was a question of law, Dollie's no-evidence motion for summary judgment was improper. Consequently the trial court did not err in denying Dollie's motion for summary judgment.") (citations omitted); *Franks v. Roades,* 310 S.W.3d 615, 621–22 (Tex.App.-Corpus Christi 2010, no pet.) (treating no-evidence motion as traditional motion for summary judgment in which claims for gross negligence, fraud, conversion, conspiracy, and deceptive trade practices were all brought on non-movant's assertion that movant had improperly sought guardianship and stating, "Whether Roades had such a duty is a question of law, which is inappropriate for a no-evidence summary judgment"); Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas,* 47 S. TEX. L.R., 409, 415 (Spring 2006). *But see Means v. ABCABCO, Inc.,* 315 S.W.3d 209, 211 (Tex.App.-Austin 2010, no pet.) (declining to follow *Harrill* "[i]n the absence of an articulated reason or further support" and "instead review[ing] the legal issue on appeal to determine if it was properly presented to the trial court and is susceptible to review under no-evidence summary judgment standards"); *Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 156 n. 4 (Tex.App.-Eastland 2001, pet. denied) (expressly disagreeing with *"Harrill's* per se reversal and remand of a no-evidence motion for summary judgment that may involve a purely legal issue," and declaring that "the court must determine the law which is applicable to the case with respect to any no-evidence motion for summary judgment in order to determine if the summary judgment evidence raises a genuine issue of material fact."); *see also, e.g., Chrismon v. Brown,* 246 S.W.3d 102 (Tex. App.-Houston [14th Dist.] 2008, no pet.) (holding, in majority opinion, that issue of existence of legal duty could properly be decided on no-evidence basis, and citing cases; dissent would hold that no-evidence summary judgment was sought as to duty based on legal standard that conflicted with established legal doctrine and that movant had admitted legal duty).

The problem with granting a no-evidence summary judgment on a purely legal issue is, as the court in the *Cone* case acknowledged, that, even if a motion for summary judgment is presented as a no-evidence motion, the law must be construed before it can be determined what the elements of the applicable law are as to which the non-movant must produce proof. *See Cone,* 68 S.W.3d at 156 n. 4. The problem is compounded by the panel ma-

jority's interpretation of *Ford Motor Co. v. Ridgway* as absolutely requiring that it first consider the no-evidence grounds supporting a motion for summary judgment when the motion is filed both as a traditional motion for summary judgment under Rule 166a(c) and as a "no evidence" motion under Rule 166a(i).

In *Ford Motor Co.*, the plaintiffs filed negligence and strict liability claims against the defendant, who subsequently moved for summary judgment under both Rule 166a(i) and alternatively under Rule 166a(c). 135 S.W.3d at 600. The supreme court first reviewed the trial court's summary judgment under the no-evidence standards of Rule 166a(i), reasoning that "[i]f the plaintiffs fail to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether [the defendant's] proof satisfied the Rule 166a(c) burden." *Id.* Subsequently, other courts have relied on *Ford Motor Co.* to hold that a court must first review summary judgments on no-evidence grounds when a party files a hybrid motion. *See, e.g., Doherty v. Old Place, Inc.*, 316 S.W.3d 840, 843 (Tex.App.-Houston [14th Dist.] 2010, no pet.) ("When the motion for summary judgment presents both no-evidence and traditional grounds, appellate courts generally review the no-evidence grounds first."); *Klentzman v. Brady*, 312 S.W.3d 886, 897 (Tex.App.-Houston [1st Dist.] 2009, no pet.) ("When a party seeks both a traditional and a no-evidence summary judgment, we first review the trial court's decision regarding summary judgment under the no-evidence standards of Rule 166a(i)[.]"); *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex.App.-Dallas 2007, pet. denied) ("When the motion for summary judgment presented both no-evidence and traditional grounds, we first review the propriety of the summary judgment under the no-evidence standards of Rule 166a(i).").

In my view, the lack of clarity over whether no-evidence motions on purely legal issues are proper, combined with the perception that *Ford* requires that the no-evidence portion of a hybrid motion for summary judgment must be decided before the traditional portion, is an invitation to err. Current no-evidence summary judgment law invites courts faced with a hybrid motion for summary judgment to decide, for example, whether the non-movant has presented evidence of his compliance with the terms of a contract before deciding whether the putative contract is valid or what its terms actually require, *see In re Estate of Allen*, 301 S.W.3d at 929, or to decide whether the non-movant has presented evidence of his compliance with a duty before determining whether he has a duty, *see Roades*, 310 S.W.3d at 621–22, or—as here—to decide whether the non-movant has presented evidence that an "obstruction" has occurred in a drainage ditch due to the movant's construction of a covered bridge in the easement without first deciding whether, under the terms of the easement, precedent, and the rules governing the construction of the terms of easements, the movant had the legal right to construct a covered bridge in the easement. The summary judgment is then upheld if it is deemed proper on the ground initially addressed—the no-evidence ground—without addressing whether the law on which the judgment was entered was sound or actually applied to the case, and without answering the ultimate question in the case: what does the law require or permit? A request for a ruling on a question of the *law* is necessarily not a claim on which the petitioner has an *evidentiary burden* of proof, which is by definition a duty of affirmatively proving a *fact* or facts in dispute.

The supreme court's reasoning in *Ford Motor Co.* simply does not apply in the

instant case because at least one of the issues addressed in Lily Gardens' motions for summary judgment did not raise any evidentiary questions, but asked the trial court to resolve a question of law. By following *Ford Motor Co.* in first reviewing the no-evidence grounds for summary judgment, the panel majority's September 10, 2010 opinion failed to resolve the legal dispute—namely, whether the terms of the easement granted the District the right to abate any "obstruction, upon said canal, right of way, that may injure, endanger, or interfere with the construction, operation, maintenance and repair of said drainage canal" and, if so, whether Lily Garden's bridge covering could count as such an encroachment. This was the ruling sought by the District's declaratory judgment action and by Lily Gardens' *traditional* motion for summary judgment, which the panel opinion on rehearing did not reach.

To be entitled to summary judgment on that traditional motion, *Lily Gardens* had the burden of proving that its bridge covering could never, as a matter of law, "injure, endanger, or interfere with the construction, operation, maintenance, and repair of said drainage canal." If Lily Gardens met this burden, the District would then have only the burden of raising a material fact issue that such a structure could interfere with its rights. In the original December 22, 2009 opinion, Judge Wilson held that Lily Gardens did not carry its burden of proving as a matter of law that the bridge could never interfere with the District's rights and that the District had raised a material fact issue as to encroachment, and he remanded the case. The September 10, 2010 panel majority opinion on rehearing, without construing the terms of the easement, but, instead, merely assuming that Lily Gardens' interpretation of the disputed legal issue was correct and that a covered bridge over the canal was not an obstruction as a matter of law, *shifted the burden of proof* to the District to have presented evidence that the bridge was, in fact, an obstruction that interfered with the District's rights under the "correct" interpretation of the law, even though the issue of what those rights actually were had not been considered on its merits and determined by the court.

In my view, the panel, in its original December 22, 2009 opinion, correctly addressed the summary judgment granted by the trial court as a traditional summary judgment, rather than as a no-evidence summary judgment. And, construing the law de novo in accordance with the traditional summary judgment standard of review, the panel correctly reversed the judgment of the trial court on the legal grounds articulated in Justice Wilson's December 10, 2009 opinion and correctly remanded the case for further proceedings.

By contrast, because the September 10, 2010 majority opinion on rehearing, addressed the issues presented solely under a no-evidence standard of review, rather than the traditional standard of review, it reached a judgment that, in my view, is insupportable under the correct construction of the applicable law and the facts of the case. I, therefore, agree with, and would have joined, the original panel opinion issued on December 22, 2009. I also agree with Justices Wilson's and Jennings's dissents on rehearing and join both.

I believe this case satisfies the standards both for en banc review and for supreme court review of (1) the proper construction and application of Rule 166a(i), governing no-evidence motions for summary judgment, and (2) the proper construction of the terms of the drainage ditch easement at issue in this case. *See* Tex.R.App. P. 41.2(c) (stating that en banc consideration "should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consider-

ation"); TEX.R.APP. P. 56.1(a) (setting out as grounds for review in supreme court "(1) whether the justices of the court of appeals disagree on an important point of law; (2) whether there is a conflict between the courts of appeals on an important point of law; (3) whether the case involves the construction or validity of a statute; ... (5) whether the court of appeals appears to have committed an error of law of such importance to the state's jurisprudence that it should be corrected; and (6) whether the court of appeals has decided an important question of state law that should be, but has not been, resolved by the Supreme Court"). I write, therefore, to ask the Supreme Court to decide the issue of whether a no-evidence motion for summary judgment can properly be brought on a pure question of law and to clarify the applicability of its reasoning in *Ford Motor Co. v. Ridgway*.

For the foregoing reasons, I respectfully dissent from denial of en banc reconsideration.

A majority of the justices of the Court voted to overrule the motion for en banc reconsideration.